**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ANTHONY RAY PETTRY,**

**Plaintiff,**

**v.** **Case No. 3:26-cv-00708**

**CABELL COUNTY SHERIFF and DEPARTMENT OF HEALTH AND HUMAN RESOURCES,**

**Defendants.**

# MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Anthony Ray Pettry's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1); his Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form), (ECF No. 2); and his *pro se* Complaint filed pursuant to 42 U.S.C. § 1983, (ECF No. 3). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge, sitting by designation, for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). Having now performed an initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the undersigned finds certain deficiencies in pleading that must be corrected by Plaintiff before this action can proceed. For the reasons that follow, the Court **GRANTS** the Applications and **ORDERS** Plaintiff to file an Amended Complaint on or before **December 14, 2026**.

## I. Relevant History

Plaintiff is currently incarcerated at South Central Regional Jail ("SCRJ") in

Charleston, West Virginia. (ECF No. 3 at 3). On November 6, 2026, Plaintiff filed a Complaint in this matter, naming the "Cabell County Sheriff" and the "Department Health Human Resources" as Defendants. (*Id.* at 1). He does not list any defendant in the section of the form complaint provided for identifying each defendant's name, position, and place of employment. (*Id.* at 4). The following facts are set forth in Plaintiff's Complaint. They are only allegations at this stage, and the Court accepts them as true solely for purposes of initial screening. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff alleges that at approximately 10:50 p.m. on August 25, 2025, deputies of the Cabell County Sheriff's Office arrived at his home at 1123 Norway Avenue in Huntington, West Virginia, when he was not present. (*Id.* at 4, 8). He states that the deputies were attempting to execute an arrest warrant and did not have a warrant to search his property. (*Id.* at 8). He further states that the property had clearly visible "no trespassing" signs. (*Id.* at 4).

At approximately 10:55 p.m., Plaintiff allegedly received a telephone call from an officer he identifies as Officer Ferguson (also spelled "Fergonson" in the Complaint). (*Id.* at 4, 8). According to Plaintiff, the officer told him that she was at his residence because of a call about a gas smell and that she was performing a wellness check. (*Id.*). Plaintiff told the officer to leave and asked whether his son was safe, and she responded that he was. (*Id.* at 8). Plaintiff alleges that he later contacted the gas company and learned that no calls had been reported, that the company had not been alerted, and that it had not been asked to check the address for a leak. (*Id.*). Plaintiff believes that the deputies used a fabricated gas leak to gain access to his home. (*Id.*).

Plaintiff claims that the deputies entered his home without a search warrant, and that when they were asked to leave, they instead stayed and searched while he was away

from the residence. (*Id.*). He further alleges that Officer Ferguson and an officer he identifies as "Hash" allowed a worker named Harper from the Department of Health and Human Resources ("DHHR") into his residence without his permission. (*Id.* at 9). According to Plaintiff, Harper searched the home without his consent, conducted a walkthrough, made notes on the condition of the home, took an inventory, and collected items such as clothing and medications from Plaintiff's bedroom. (*Id.*). Plaintiff states that he was on the telephone with Harper and the deputies throughout and repeatedly asked them to leave, but they refused. (*Id.*). Plaintiff references an emergency custody order and asserts that such an order did not authorize entry onto his property or the removal of his property. (*Id.*).

Plaintiff alleges that these actions violated his rights under the Fourth Amendment. (*Id.*). As relief, he seeks $150,000 in damages for the violation of his constitutional rights, emotional distress, and harassment. (*Id.* at 5).

## II. Application to Proceed Without Prepayment of Fees and Costs

A prisoner may bring a civil action without prepaying the filing fee if he submits an affidavit showing that he is unable to pay it, together with a certified copy of his inmate account statement for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(a)(1)–(2). Plaintiff's Applications and the certificate of his inmate account show that he lacks the funds to prepay the $350.00 filing fee. Accordingly, the Applications are **GRANTED**. (ECF Nos. 1, 2).

A prisoner who proceeds without prepayment of fees remains obligated to pay the full filing fee in installments. 28 U.S.C. § 1915(b)(1). The Court must first assess an initial partial filing fee equal to twenty percent of the greater of the average monthly deposits to his inmate account or the average monthly balance in his inmate account for the six-

month period preceding the filing of the Complaint. *Id.* Plaintiff's institutional account information reflects average monthly deposits of $58.37 and an average monthly balance of $266.52. (ECF No. 1 at 2). Twenty percent of the greater amount, $266.52, is $53.30. The Court therefore **ASSESSES** an initial partial filing fee of $53.30. SCRJ, or any other agency or facility having custody of Plaintiff, is **ORDERED** to withdraw $53.30 from Plaintiff's inmate account and forward it to the Clerk of Court within **thirty (30) days** of entry of this Order. If Plaintiff's inmate account does not contain sufficient funds during that period, the facility shall forward the initial partial filing fee as soon as sufficient funds become available. *See* 28 U.S.C. § 1915(b)(1).

Beginning **January 5, 2027**, or after the initial partial filing fee has been paid, whichever is later, and on the fifth day of each month thereafter, monthly payments shall be made in an amount equal to twenty percent of the preceding month's income credited to Plaintiff's inmate account until the full filing fee of $350.00 has been paid. SCRJ, or any other agency or facility having custody of Plaintiff, is **ORDERED** to forward payments from Plaintiff's inmate account to the Clerk of Court each time the amount in Plaintiff's inmate account exceeds $10.00 until the full filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

It is **ORDERED** and **NOTICED** that the recovery, if any, obtained in this action shall be paid to the Clerk of Court who shall collect therefrom all unpaid fees and costs taxed against Plaintiff and shall pay the balance, if any, to Plaintiff.

## III. <u>Deficiencies in the Complaint</u>

The Court must screen a complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss the complaint, or any portion of it, that is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the facts alleged allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels, conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough. *Id.*

The Court construes *pro se* pleadings liberally and holds them to less stringent standards than pleadings drafted by attorneys. *Erickson*, 551 U.S. at 94. Liberal construction does not, however, permit the Court to ignore a clear failure to allege facts setting forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or to act as the plaintiff's advocate and construct claims that were not raised, *see Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). At the same time, to achieve justice, the Court may allow a *pro se* plaintiff the opportunity to amend the complaint in order to correct deficiencies in the pleading. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

Plaintiff alleges that the warrantless entry into and search of his home violated the Fourth Amendment. (ECF No. 3 at 8–9). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*,

445 U.S. 573, 585 (1980) (citation omitted). Searches and seizures inside a home without a warrant are therefore presumptively unreasonable. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). That presumption may be overcome in limited circumstances, such as when a resident consents, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), or when officers have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury, *Brigham City*, 547 U.S. at 403–04. There is no general "community caretaking" exception permitting warrantless entry into a home. *Caniglia v. Strom*, 593 U.S. 194, 196, 199 (2021). An arrest warrant founded on probable cause carries with it the limited authority to enter the dwelling in which the suspect lives when there is reason to believe the suspect is within. *Payton*, 445 U.S. at 603. The Fourth Amendment's protections are not limited to law enforcement officers; they extend to searches by other government officials. *See Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967). A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).

Read liberally, Plaintiff's allegations that deputies entered and searched his home without a search warrant, consent, or a genuine emergency, refused to leave when asked, and admitted a DHHR worker who inventoried the home and removed his belongings, may support a claim under the Fourth Amendment. (ECF No. 3 at 4, 8–9). In its current form, however, the Complaint does not name a defendant against whom such a claim may proceed. (*Id.* at 1, 4). The Court addresses each deficiency below so that Plaintiff may correct it in an amended complaint.

***A. Cabell County Sheriff***

It is unclear whether Plaintiff intends to sue the Cabell County Sheriff's Office as

an entity or the Sheriff of Cabell County as an individual. Either way, the Complaint does not state a claim as currently pleaded.

First, to the extent Plaintiff intends to sue the Sheriff's Office itself, a party's capacity to be sued is determined by state law. Fed. R. Civ. P. 17(b)(3). West Virginia law authorizes a county commission to sue and be sued, *see* W. Va. Code § 7-1-1(a), but contains no similar provision for a county sheriff's office. Accordingly, this Court has held that the Cabell County Sheriff's Office is not a separate entity that may be sued. *Slone v. Racer*, No. 3:23-0636, 2024 WL 4314898, at *3 (S.D.W. Va. Sept. 26, 2024); *see also Zsigray v. Cnty. Comm'n of Lewis Cnty.*, No. 2:16-CV-64, 2017 WL 462011, at *2 (N.D.W. Va. Feb. 2, 2017), *aff'd*, 709 F. App'x 178 (4th Cir. 2018); *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989).

Second, if Plaintiff intends to sue the Sheriff in an official capacity, that claim is treated as a claim against the county itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). A local government is not liable under § 1983 merely because it employs someone who violated a plaintiff's rights; it is liable only when an official policy or custom causes the deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A policy or custom may arise from (1) an express policy, such as a written rule; (2) the decisions of a person with final policymaking authority; (3) an omission, such as a failure to properly train employees, that manifests deliberate indifference to the rights of citizens; or (4) a practice so persistent and widespread as to constitute a custom with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). The Complaint does not identify any policy or custom of Cabell County or explain how it caused Plaintiff's injury.

Third, to the extent Plaintiff intends to sue the Sheriff in an individual capacity, the Complaint does not allege that the Sheriff personally participated in the entry or search,

or facts that would support supervisory liability.

### *B. Department of Health and Human Resources*

Section 1983 provides a cause of action only against a "person" acting under color of state law. 42 U.S.C. § 1983. A state agency is not a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, the Eleventh Amendment bars suits in federal court against a state and its agencies, regardless of the relief sought, unless the state has consented. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). DHHR is an agency of the State of West Virginia, and West Virginia has not consented to suit.[1] Plaintiff therefore cannot proceed against DHHR, or any successor agency, on his § 1983 claims. If Plaintiff seeks damages for the conduct of an individual DHHR employee, he must name that employee as a defendant.

### *C. Individual Defendants*

Liability under § 1983 is personal. Each defendant must have personally participated in the alleged violation. *Iqbal*, 556 U.S. at 676; *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). A supervisor is not liable for the conduct of subordinates unless the supervisor had actual or constructive knowledge that a subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury, responded with deliberate indifference, and thereby caused the injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The Complaint describes conduct by Officer Ferguson, an officer identified as "Hash," DHHR worker Harper, and other unnamed deputies, but names none of them as defendants. (ECF No. 3 at 4, 8–9). The Complaint also refers to "the sheriffs" collectively

[1] Effective January 1, 2024, DHHR was terminated and its functions divided among separate departments, including the West Virginia Department of Human Services. *See* W. Va. Code § 5F-1-2(a). The analysis is the same for any successor agency.

without stating which deputies entered the home, which deputies searched it, and which refused to leave. (*Id.* at 8–9). If Plaintiff seeks relief against any individual, he must name that person and state what that person did or failed to do, and when. If Plaintiff does not know a person's name, he may identify the person as a "John Doe" or "Jane Doe" defendant, so long as he describes the person and the person's conduct in enough detail to allow the person to be identified through discovery. *See Schiff v. Kennedy*, 691 F.2d 196, 197–98 (4th Cir. 1982).

### *D. Related Criminal Proceedings*

Plaintiff states that the deputies were attempting to execute an arrest warrant when they came to his home, and he is now incarcerated. (ECF No. 3 at 3, 8). The Complaint does not say whether any criminal charges arose from the events of August 25, 2025, or what became of them. That information may bear on whether Plaintiff's claims may proceed at this time. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007); *Younger v. Harris*, 401 U.S. 37, 43–45 (1971). In his amended complaint, Plaintiff should state whether he was charged with any crime in connection with the events of August 25, 2025, or with evidence obtained from his home that day, and, if so, the status of those charges.

### *E. Other Possible Claims*

Plaintiff seeks damages for emotional distress and harassment, (ECF No. 3 at 5), and refers to an emergency custody order, (*id.* at 9). If Plaintiff intends to assert any claim under state law, such as a claim for trespass, conversion, or intentional infliction of emotional distress, he must say so, identify the defendants against whom each claim is asserted, and allege the facts supporting it. *See* 28 U.S.C. § 1367(a). If Plaintiff intends to assert any claim concerning the emergency custody order or the removal of his property,

he must likewise say so, identify the persons responsible, and state what each person did.

### *F. One Single Document*

Plaintiff is advised that his Amended Complaint will supersede the original Complaint and should therefore contain all claims, factual allegations, and Defendants that Plaintiff wishes the Court to consider. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001). Plaintiff should not rely upon the original Complaint or any other prior filing to supply allegations or claims omitted from the Amended Complaint. Rather, Plaintiff should include all allegations and facts relevant to his claims in one single Amended Complaint.

## IV. Conclusion

For the reasons stated above, Plaintiff's Applications to Proceed Without Prepayment of Fees and Costs, (ECF Nos. 1, 2), are **GRANTED**. South Central Regional Jail is **ORDERED** to withdraw the initial partial filing fee of $53.30 from Plaintiff's inmate account and forward it to the Clerk of Court within **thirty (30) days** of entry of this Order or, if the account lacks sufficient funds during that period, as soon as sufficient funds become available. If Plaintiff's inmate account lacks sufficient funds to pay the initial partial filing fee, Plaintiff shall, within the same thirty-day period, notify the Court of that circumstance in writing and submit a current copy of his inmate account statement demonstrating his inability to make the initial partial payment.

Plaintiff is further **ORDERED** to file, on or before **December 14, 2026**, an Amended Complaint pursuant to 42 U.S.C. § 1983 using the Court-approved form provided by the Clerk of Court. Plaintiff's Amended Complaint must comply with the requirements set forth herein and must be filed as one complete, standalone document. In his Amended Complaint, Plaintiff shall:

1. Identify by name each individual or entity that Plaintiff contends violated his federal constitutional rights. To the extent Plaintiff does not know the name of a particular individual, Plaintiff shall identify that person as specifically as possible, including, if known, the individual's position or job title, employer, work location, and other information that may assist in identifying the individual;
2. Separately state the factual basis for each claim, including the approximate date and location of the relevant events;
3. Explain what each Defendant personally did or failed to do that Plaintiff contends violated his federal constitutional rights, including which individuals entered his home, which individuals searched it or removed property from it, and which individuals refused to leave when asked;
4. To the extent Plaintiff intends to assert a claim against Cabell County or the Cabell County Sheriff in an official capacity, identify the policy, practice, or custom that he contends caused his injury;
5. State whether Plaintiff was charged with any crime in connection with the events of August 25, 2025, or with evidence obtained from his home that day, and, if so, the status of those charges;
6. To the extent Plaintiff intends to assert any claim under state law, or any claim concerning the emergency custody order or the removal of his property, state that claim and identify the persons against whom it is asserted;
7. To the extent known, identify the federal constitutional right that Plaintiff contends was violated by each Defendant; and

8. Clearly and simply state the relief Plaintiff seeks from this Court.

Plaintiff is hereby **NOTIFIED** that the Amended Complaint will supersede the original Complaint and become the operative pleading in this action. Therefore, Plaintiff must include in the Amended Complaint all claims, factual allegations, and Defendants that he wishes the Court to consider and may not rely upon or incorporate by reference allegations contained in the original Complaint or any other prior filing. Plaintiff is further **NOTIFIED** that failure to file an Amended Complaint on or before **December 14, 2026** may result in a recommendation that this action be dismissed for failure to prosecute and failure to comply with an order of the Court. *See* Fed. R. Civ. P. 41(b); L. R. Civ. P. 41.1. Finally, Plaintiff is further **NOTIFIED** that he is responsible for notifying the Clerk of Court of any change in his address or other contact information. Failure to do so may result in a recommendation of dismissal of this action.

The Clerk is directed to provide Plaintiff with a blank form Complaint pursuant to 42 U.S.C. § 1983 and a copy of this Memorandum Opinion and Order. The Clerk is further directed to send a copy of this Memorandum Opinion and Order to the appropriate financial officer at South Central Regional Jail.

**ENTERED:** November 13, 2026

/s James P. Mazzone

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE